UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 5:19-CR-153-GFVT-MAS ) |
| DRAVEN GREENE, | ) ) |
| Defendant. | ) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant Draven Greene's Motion to Suppress. [DE 15]. The Hon. Gregory F. Van Tatenhove referred the initial matter to the undersigned for a Report and Recommendation. [*See* DE 15 (Motion to Suppress); DE 18 (Referral Order)]. The United States responded to the Motion. [DE 20]. The Court held an evidentiary hearing at which the parties presented witnesses and arguments through counsel. [DE 34]. For the reasons stated below, the Court recommends that the District Court deny Greene's Motion to Suppress.

**I.   RELEVANT FACTUAL BACKGROUND**

On July 23, 2019, Richmond Police Department Officers James Colyer and Daniel Kirstein, each in separate marked patrol vehicles, responded to a call about a stolen vehicle. [DE 36, Transcript, Page ID # 153-54]. As Officer Colyer drove to the area where the stolen vehicle was spotted, he noticed a silver Pontiac G6 parked in the parking lot of a nearby Waffle House with its headlights on just after 2:00 a.m. [DE 36 at Page ID # 154-55]. Officer Kirstein recalled seeing the Pontiac in the Waffle House parking lot around 3:00 a.m. or 4:00 a.m., and similarly recalled that its headlights were on. [DE 36 at Page ID # 183-84].

A few hours later, around 5:00 a.m., Officer Colyer observed that the Pontiac appeared to be in the same spot with the headlights still on and the engine still running. [DE 36 at Page ID # 155-56]. Officer Colyer "decided to go ahead and get out with the vehicle just to make sure they were okay. Make sure the occupants in the vehicle were okay." [DE 36, at Page ID # 157].

Officer Colyer approached the driver's side of the vehicle and noted that there were two occupants in the front seats, both of whom appeared to be sleeping or unconscious. [DE 36 at Page ID # 157-58]. The officers later discovered the occupants' identities: Draven Greene was in the driver's seat and his paramour, Helen Smith, was in the front passenger seat (respectively, "Greene" and "Smith"). Officer Kirstein approached the passenger side of the vehicle as Officer Colyer began shining his light into the vehicle on the occupants' faces and knocking loudly on the front and rear driver's side windows. [DE 16, Ex. 2 to Mot. to Suppress at DE 15, Colyer Body Worn Camera, at 00:01-55.]. After nearly one minute, Smith had awoken but Greene had not moved. Officer Colyer "figured something was bound to be wrong with him" and thought "[h]e needed some kind of welfare check just to make sure he was okay." [DE 36 at Page ID # 159-60]. Officer Colyer opened front driver's side door, and after physically patting and talking to Greene, managed to finally rouse him. Upon opening the door, Officer Colyer testified he smelled marijuana (Officer Kirstein stated the same on Officer Colyer's Body Worn Camera footage at 9:20-25) and consequently, searched the vehicle. The officers found methamphetamine and a firearm in vehicle. A grand jury indicted Greene for possession with intent to distribute 50 grams or more of methamphetamine and two firearm charges. [DE 1]; *See* 18 U.S.C. § 841(a)(1); 18 U.S.C. § 922 and 924.

## II.  ANALYSIS

Greene claims this encounter violated his Fourth Amendment rights. [DE 15]. Specifically, Greene contends that Officer Colyer impermissibly "conducted a search of the

2

vehicle by unilaterally opening the driver's side door without any apparent probable cause to do so." [DE 15 at Page ID # 48-49]. Greene requests the suppression of all evidence discovered as a result of the vehicle search. *United States v. Kennedy*, 61 F.3d 494, 497 (6th Cir. 1995) ("the exclusionary rule prohibits the admission of evidence seized in searches and seizures that are deemed unreasonable under the Fourth Amendment, as well as derivative evidence acquired as a result of the unlawful search").

At the outset, the parties generally agree as to the scope of the legal inquiry. Greene does not dispute the fact that the officers were permitted to approach the vehicle without any level of suspicion. The United States does not dispute that opening the car door "was at least a seizure and detention, if not a search[.]" [DE 20 at Page ID # 80]. And Greene concedes the officers were permitted to conduct a full search of the vehicle once they smelled marijuana. Thus, as the parties agreed upon at the suppression hearing, the only issue before the Court is whether Officer Colyer was permitted, under the circumstances, to open Greene's car door without a warrant. [DE 36 at Page ID # 152]. Greene argues he was not, but the United States counters that the community caretaker exception permits such a search without a warrant. As analyzed and explained more fully below, the Court agrees with the United States.

A.   **THE COMMUNITY-CARETAKER EXCEPTION TO THE WARRANT REQUIREMENT**

The Supreme Court described law enforcement's "community caretaking" duties, particularly where vehicles are concerned, in *Cady v. Dombrowski*, 413 U.S.C. 433 (1973):

> the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

3

*Cady v. Dombrowski*, 413 U.S. 433, 441 (1973).  The community-caretaker exception to the Fourth Amendment's warrant requirement recognizes that law enforcement officers, in their role in the community, have "extensive, and often noncriminal contact with automobiles [that] will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband." *Cady*, 413 U.S. at 443.  Such evidence does not have to be suppressed where it is discovered while the officer is performing his community caretaking duties, particularly where there is an emergency threatening human life or limb.  *See Taylor v. City of Saginaw*, 922 F.3d 328, 335 (6th Cir. 2019) ("Courts have applied the community caretaker exception in narrow instances when public safety is at risk."); *Cf.*, *United States v. Williams*, 354 F.3d 497, 508 (6th Cir. 2003) (Refusing to apply the community caretaking exception to entry into a residence where there was no immediate danger to life or limb and the officers had a considerable investigatory purpose in addition to a minor non-investigatory purpose, because "[t]he community caretaking function of the police cannot apply where, as here, there is significant suspicion of criminal activity.").

In analyzing whether the community-caretaker exception should apply, the Court must determine whether the officers' actions were reasonable under the circumstances.  *See United States v. Lewis*, 869 F.3d 460, 463 (6th Cir. 2017) ("[A]ny limited intrusion on Lewis's privacy from simply opening the [vehicle] door was reasonable.").

**B.     THE COMMUNITY-CARETAKER EXCEPTION APPLIES TO THE OFFICERS' SEARCH OF GREENE'S VEHICLE**

The Court finds that it reasonably appeared to Officers Colyer and Kirstein that Greene was possibly unconscious and/or in need of medical attention, and the intrusion into his privacy of opening the car door was reasonable under those circumstances.

The Sixth Circuit directly addressed the issue before the Court in a case with similar facts.  *United States v. Lewis*, 869 F.3d 460 (6th Cir. 2017) presented "the question of whether a warrant

4

is required for a police officer, not investigating any wrongdoing, to open the passenger door of a parked truck[.]" *United States v. Lewis*, 869 F.3d 460, 461 (6th Cir. 2017). The Court found that "[f]ortunately, the Fourth Amendment does not impose technical prerequisites upon such a natural act of community service." *Id*. In *Lewis*, officers encountered an intoxicated woman in a Wal-Mart store. *Id*. She told them that her boyfriend, Lewis, was outside in a vehicle and could drive her home. *Id*. The officers located Lewis's truck and found him asleep in the vehicle. *Id*. One of the officers opened the door to inquire whether Lewis was "all right to drive" his intoxicated girlfriend home. *Id*. When the officers opened the door, they noticed a baggie of suspected narcotics in Lewis's lap that he quickly threw to the back floorboard. These observations resulted in a full search of the truck and the charges in the case. *Lewis*, 869 F.3d at 461-62. The Sixth Circuit found the officers' actions fit within the community-caretaker exception to the warrant requirement because their sole purpose in opening Lewis' vehicle door was to determine whether he could drive his girlfriend home, not any investigative purpose, and that the intrusion on Lewis's privacy was "limited" and "reasonable" under the circumstances. *Lewis*, 869 F.3d at 463.

   The facts in the case before the Court are more compelling for the application of the community-caretaker exception to the warrant requirement than those in *Lewis*. Officer Colyer testified he observed Greene's vehicle in the same area for two or three hours with the running lights and engine on, which led to his decision to "[m]ake sure the occupants in the vehicle were okay." [DE 36 at Page ID # 156-57]. Officer Colyer's body worn camera shows that he was shining his light inside the vehicle—specifically, on Greene's face several times—and loudly rapping on the front and rear driver's side windows where Greene was seated for fifty-five seconds before he opened the driver's side door. [DE 16, Ex. 2 to Mot. to Suppress at DE 15, Colyer Body Worn Camera, at 00:01-55.]. The noise and light aroused Smith on the opposite side of the car,

5

yet still did not awaken Greene.[1]  The critical question to this matter is whether it was reasonable for Officer Colyer to open Greene's door at this moment, when he could not arouse Greene from outside the vehicle.  The Court finds that it was.

In *Lewis*, there is no indication that the officers were concerned for the safety of Lewis or that the officers attempted to rouse Lewis prior to opening the door; yet, the Sixth Circuit still found the intrusion to be "reasonable," "minimal," and within the community-caretaker exception. *United States v. Lewis*, 869 F.3d 460, 463-64 (6th Cir. 2017) ("True, the officers apparently did not knock on the truck window or attempt to speak with Lewis before opening the door, which might have been more respectful of Lewis's privacy."  Nonetheless, "any failure to knock or attempt to speak does not make the officers' actions here unreasonable.").

In contrast to *Lewis*, Officer Colyer did knock and attempt to awaken Greene prior to opening the door.  Officer Colyer testified that he has responded to numerous drug overdose scenes as a police officer, and that he was concerned about a possible overdose situation when he knocked on the window and did not receive a response.  [DE 36 at Page ID # 187-88].  Greene admitted he was "not responsive" prior to Officer Colyer opening the door.  [DE 36 at Page ID # 214].  At this point it was entirely appropriate for Officer Colyer, acting in his community-caretaking role, to open the door of the vehicle to see if Greene was in midst of a medical emergency.  Greene suggested that lieu of opening the vehicle door, Officer Colyer could have called for emergency medical technicians, sought a search warrant, or simply done nothing and walked away.  [DE 36

---

[1] Coyler testified that Kirstein knocked on the passenger's window as well.  The Court cannot determine, precisely, whether this happened before or after the passenger awoke, or before, after, or during Coyler's knocks on the driver's side of the vehicle.  The detail does not change the analysis, but the Court recognizes that either or both officers' lights and sounds may have aroused Greene's passenger.

at Page ID # 214]. All of these alternatives, however, could have resulted in Greene's death or serious injury if he was, in fact, experiencing a medical emergency.[2]

"The [exclusionary] rule's sole purpose, we have repeatedly held, is to deter future Fourth Amendment violations. . . . For exclusion to be appropriate, the deterrence benefits of suppression must outweigh its heavy costs." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). The "heavy cost" discussed in *Davis* was the potential that criminal activity goes unpunished. The "heavy cost" of suppression here is quite different: accepting Greene's argument could inadvertently deter law enforcement from providing life-saving assistance those who need it. This is not the type of law enforcement activity the exclusionary rule was designed to deter. The Court finds any suggestion that a law enforcement officer should delay checking on and rendering assistance to an unresponsive person to be morally repugnant. The Court further finds that the community-caretaker exception to the warrant requirement is designed specifically so that law enforcement officers, acting in good faith, who stumble across evidence of a crime during this type of event will not be sanctioned with suppression of the evidence.

### III.   CONCLUSION

For reasons stated herein, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Suppress. [DE 15]. The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal

---

[2] Greene conceded at the suppression hearing that the "the critical issue is the justification for the entry into the car" and "everything after that, after that entry, after that door swings open, is irrelevant" because the officers smelled marijuana, which justified a full search of the vehicle and its occupants. Thus, although the parties spent a considerable amount of energy in their briefs and at the hearing arguing about whether the firearm in the backseat also justified the search of the vehicle, the issue is somewhat of a red herring. The parties agreed that the seizure of the vehicle—and possibly the search—commenced when Officer Colyer opened the driver's side door. This had nothing to do with the firearm. The parties further agree that the subsequent search is fully supported by the officers' plain smell of marijuana; any inquiry into the presence of a firearm to support the search is unnecessary and distracting. Greene does not dispute that the firearm was in plain view. The presence of the firearm resulted in charges under 18 U.S.C. § 924 and § 922.

rights concerning this recommendation, issued under subsection (B) of said statute. As defined by § 636(b) (1), Fed. R. Crim. P. 59(b), and local rule, within **fourteen** days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court.

Entered this 20th day of April, 2020.



Signed By:
Matthew A. Stinnett     MAS
United States Magistrate Judge