UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | Criminal No: 5:19-cr-00153-GFVT-MAS |
| | ) | |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| DRAVEN GREENE, | ) | **&** |
| | ) | **ORDER** |
| Defendant. | ) | |

*** *** *** ***

Defendant Draven Green filed a motion to suppress evidence obtained as a result of what he argues is an unlawful search and seizure. [R. 15.] The matter was referred to Magistrate Judge Matthew A. Stinnett for a hearing. Judge Stinnett held the suppression hearing on March 3, 2020. [R. 34.] A Recommended Disposition followed. [R. 43.] Greene timely filed objections to Judge Stinnett's Recommended Disposition, which the Court reviews *de novo*. [R. 44.] For the following reasons, Greene's objections are OVERRULED, and Judge Stinnett's Recommended Disposition is ADOPTED.

I

Defendant Draven Greene is charged with possession with intent to distribute 50 grams or more of methamphetamine and two firearm charges. [R. 1.] These charges stem from a vehicle search conducted by Richmond Police Department Officers James Colyer and Daniel Kirstein. [R. 36.] Magistrate Judge Stinnett outlined the facts in his Recommended Disposition. [R. 43.]

On July 23, 2019, Officers Colyer and Kirstein responded to a call about a stolen vehicle. [R. 36.] The officers were in separate cruisers. On his way to the call, Officer Colyer noticed a silver Pontiac G6 parked in the parking lot of a Waffle House with its headlights on at around 2:00 a.m. Officer Kierstein recalled seeing the car as well, also with its headlights on, at around 3:00 a.m. or 4:00 a.m.

Hours later, at around 5:00 a.m., Officer Colyer again observed the Pontiac in what appeared to be the same spot, its headlights still on. Officer Colyer "decided to go ahead and get out with the vehicle just to make sure they were okay. Make sure the occupants in the vehicle were okay." [R. 36.] Officer Colyer approached from the driver's side door while Officer Kirstein approached the passenger door. The officers noted there were two occupants in the vehicle, later discovered to be defendant Draven Greene and Helen Smith. The officers knocked on the windows of the vehicle and shined their flashlights into the cab to rouse Greene and Smith. After a minute, Smith awoke, but Greene was still unresponsive. Officer Colyer, apparently concerned something was physically wrong with Greene, opened the driver's side door.

Officer Colyer was able to wake Greene by physically patting him and talking to him. Upon opening the car door, however, Officer Colyer says he smelled marijuana. The officers searched the vehicle and found methamphetamine and a firearm in the vehicle.

To begin, Judge Stinnett noted that the parties agree as to the scope of the issue before the Court. [R. 43.] Green does not dispute that the officers were permitted to approach the vehicle under the circumstances, and the United States concedes that Officer Colyer's action of opening the driver side door constituted at least a seizure, if not also a search. *Id.* Greene further concedes that the smell of marijuana permitted officers to search the vehicle. Therefore, the only

2

issue before the Court at the suppression hearing—and now—is whether Officer Colyer was permitted, under the circumstances, to open Green's car door without a warrant. *Id.*

Judge Stinnett answered in the affirmative. Judge Stinnett found that Officer Colyer's conduct is covered under the community-caretaker exception to the Fourth Amendment's warrant requirement. Green raises several objections, which the Court reviews *de novo*. *See* 28 U.S.C. § 636(b)(1)(c).

## II

The Fourth Amendment of the United States Constitution protects an individual from unreasonable searches and seizures. Traditionally limited to "persons, houses, papers, and effects," early jurisprudence surrounding the Fourth Amendment related to common-law trespass. *United States v. Jones*, 565 U.S. 400, 405 (2012). Courts have since deviated from that strict approach, finding a violation of the Fourth Amendment occurs if a government officer intrudes upon a person's "reasonable expectation of privacy." *Katz v. United States*, 389 U.S. 347, 360 (1967).

The community-caretaker exception to the warrant requirement contemplates that there will be instances where individuals interact with law enforcement unrelated to violations of criminal law. With respect to vehicles, specifically, the Supreme Court has recognized:

> the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some such contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers . . . engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.

*Cady v. Dombrowski*, 413 U.S. 433, 441 (1973). As a result of their community caretaker obligations, law enforcement officers have "extensive, and often noncriminal contact with

3

automobiles that will bring local officials in 'plain view' of evidence, fruits, or instrumentalities of a crime, or contraband. *Id.* at 443. Whether the community-caretaker exception applies turns on whether the officers' actions were reasonable under the circumstances. *See id.* at 439 ("The ultimate standard set forth in the Fourth Amendment is reasonableness.").

### A

Except in certain cases, a search of private property without consent or a warrant is unreasonable under the Fourth Amendment. *See Camara v. Municipal Court*, 387 U.S. 523, 528–29 (1967). Judge Stinnett relied heavily on *United States v. Lewis* in applying the community-caretaker exception in the case at bar. Speaking broadly, Green objects to Judge Stinnett's reliance on *Lewis*. [R. 44 at 4–5.] Green argues that under *Lewis*, the community-caretaker exception to the warrant requirement only applies where law enforcement's caretaking obligation is the "sole purpose" for conducing the warrantless search. *Id.*; *see United States v. Lewis*, 869 F.3d 460, 461 (6th Cir. 2017) ("Here, the district court found that that officers' 'sole purpose was to find Lakes a safe ride home' from which the district court concluded that the officers 'were not investigating a crime.' . . . There is no clear error here[.]").

Green argues there are six key facts which undermine the United States' argument that the community-caretaking exception applies to the case at hand. They are:

1. Colyer and Kirstein allowed the subject vehicle to remain with lights on and engines running for approximately three hours before actually approaching the vehicle;
2. Prior to Colyer's entry into the vehicle, Kirstein saw a firearm in the backseat of the vehicle and notified Colyer of its presence;
3. The reports prepared by Colyer and Kirstein in this matter, which were completed within a day of the incident, failed to mention that the purpose for entering the vehicle was for the health and well-being of the Defendant;
4. Officer Colyer falsely stated in his report that the Defendant initially opened the door, which lead to the search of the vehicle;
5. Colyer and Kirstein were also concerned for their own personal safety due to the presence of a gun; and

>    6. The Officers never called the EMT at any time prior to entry into the vehicle between 2 a.m. or 5 a.m.

[R. 44 at 5 (internal citations to record omitted).] Green argues that these facts, collectively, undermine Officer Colyer and Officer Kirstein's credibility, and therefore the Court should not rely on their testimony on the suppression issue. Green further argues that the Officers' knowledge of the gun, failure to investigate when they first noticed the Pontiac around 2:00 a.m., and failure to call EMT at any time demonstrate they were not operating in a caretaking capacity in their dealings with Green.

These arguments are not persuasive. First, no ill-intent can be inferred from the fact Officers Colyer and Kirstein did not approach Green's Pontiac until they realized it had been sitting there several hours. There is nothing unusual about a car sitting in a parking lot with its lights on, but it is quite unusual to remain parked this way for hours on end. Second, there is no basis in law for Green's argument that, at the moment Officers Colyer and Kirstein noticed a firearm in the backseat, their community caretaking purpose evaporated. Third, Green is correct the reports did not mention the reason for approaching the car. [*See* R. 28-1; R. 28-2.] However, the reports describe seeing the car on two instances several hours apart, and describe being unable to awake Green. The fact that the report does not explicitly state the officers approached to check on Green's "health and well-being" does not mean it wasn't so.[1] Fourth, Green is again correct that Colyer's report inaccurately says Green opened the car door, when in fact it was Colyer. But who opened the door informs whether there was a warrantless search of the vehicle, not Colyer's motive in approaching the car. The United States concedes that Officer Colyer's action of opening Green's car door constituted a search. Finally, body camera evidence from

---

[1] The reports are silent as to the officers' motivation for approaching Green's vehicle. They state neither investigatory nor caretaking intention. Green would have the Court assume, then, that Officer Colyer's intent was investigatory. The Court declines. The reports do not explicitly speak to intent one way or the other.

Officer Colyer shows that Officer Colyer tried to awaken Green for fifty-five seconds before finally opening the car door. True, Officer Colyer could have used that time to summon emergency services instead, but it was also "reasonable under the circumstances" to continue to try and rouse Green.

Ultimately, Officer Colyer and Officer Kirstein's actions were reasonable under the circumstances. When knocking on the door failed to wake Green and Officer Colyer began to suspect an overdose, opening the car door and attempting further to wake Green was a reasonable action to undertake. The facts cited by Green do not persuade the Court that the community-caretaker exception to the warrant requirement is inapplicable here. And Judge Stinnett's observation regarding the effect of excluding the evidence collected in this case is well-taken: "accepting Green's argument could inadvertently deter law enforcement form provided life-saving assistance to those who need it." [R. 43 at 7.]

### III

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as that Defendant Draven Green's Objections **[R. 44]** are **OVERRULED**. Judge Stinnett's Recommended Disposition **[R. 43]** is **ADOPTED**.

This 27th day of May, 2020.

Gregory F. Van Tatenhove
United States District Judge